# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASOFA V. TAFILELE,<br><br>          Plaintiff,<br><br>   vs.<br><br>HARRINGTON, et al.,<br><br>          Defendants. | 1:10cv01493 LJO DLB PC<br><br>FINDINGS AND RECOMMENDATION REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>(Document 44)<br><br>THIRTY-DAY OBJECTION DEADLINE |

Plaintiff Asofa V. Tafilele ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on August 18, 2010. This action is proceeding on Plaintiff's claims that (1) Defendants Hernandez, Williams, Spurgeon and Murphy used excessive force against him in violation of the Eighth Amendment; and (2) Defendant Meza was deliberately indifferent to a serious medical need in violation of the Eighth Amendment.

On October 4, 2012, Defendants filed this motion for summary judgment. Plaintiff filed an opposition on December 4, 2012, and Defendants filed a reply on December 26, 2012.[1]

---

[1] In Defendants' October 4, 2012, notice, filed concurrently with their motion for summary judgment, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment. Klingele v. Eikenberry, 849 F.2d 409, 411-412 (9th Cir. 1988).

1

## I. LEGAL STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine dispute as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. at 324. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586, n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

of the suit under the governing law, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n</u>, 322 F.3d 1039, 1046 (9th Cir. 2002); <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, <u>Long v. County of Los Angeles</u>, 442 F.3d 1178, 1185 (9th Cir. 2006); <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." <u>T.W. Elec. Serv.</u>, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (quoting former Rule 56(e) advisory committee's note on 1963 amendments).

In resolving a motion for summary judgment, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, <u>Anderson</u>, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, <u>Matsushita</u>, 475 U.S. at 587 (citing <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962) (per curiam)).

Finally, to demonstrate a genuine dispute, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 586-87 (citations omitted).

## II.  STATEMENT OF UNDISPUTED FACTS[2]

   A.   *Defendants' Facts*

Plaintiff was incarcerated at Kern Valley State Prison ("KVSP") at the time of the events at issue.  Ex. A, Cordova Decl.

On January 21, 2010, Plaintiff was walking laps in the dayroom.  Solez Decl. ¶ 4. Plaintiff walked behind Officer Northcutt, and Officer Northcutt instructed him not to do so because it was a security risk.  Northcutt Decl. ¶ 4.  Plaintiff came back around and attempted to walk behind Officer Northcutt again.  Officer Northcutt stepped back, turned towards Plaintiff and began to counsel him about walking behind staff when Plaintiff said, "I'll walk wherever the fuck I want" and punched Officer Northcutt in the left eye.  Northcutt Decl. ¶ 5.  Officer Solez sounded the alarm and pepper-sprayed Plaintiff in the face as Officer Northcutt drew his baton and hit Plaintiff's left thigh.[3]  Northcutt Decl. ¶ 6, 5.  Officer Solez attempted to gain Plaintiff's compliance with orders to get down, while another inmate ran towards him.  Solez Decl. ¶ 6. Plaintiff then threw another punch at Officer Northcutt and hit him in the left cheek.  He tried to swing his baton again, but slipped on pepper-spray residue on the floor.  Northcutt Decl. ¶7.  As Northcutt was lying on the floor, Plaintiff attempted to get on top of him.  Northcutt Decl. ¶ 8.

During the dispute, Defendant Mata was watching from the control booth overlooking the unit and providing security coverage.  Mata Decl. ¶ 3.  He saw Plaintiff and Officer Northcutt talking on the dayroom floor when Plaintiff abruptly struck Officer Northcutt two times in the face with a closed fist.  Mata Decl. ¶ 4.  Defendant Mata sounded his alarm and repeatedly told Plaintiff to "get down," but Plaintiff ignored the orders.  Mata Decl. ¶ 5.  Defendant Mata then aimed the 40mm gas gun (with foam projectiles) at Plaintiff's upper right thigh, and fired a round, striking Plaintiff in the upper right leg area.  Mata Decl. ¶ 6.  Officer Northcutt heard the

---

[2]  Because Plaintiff's version of events and Defendants' version differ so greatly, both will be included.
[3]  Although the summary of undisputed facts in the motion states that the baton struck Plaintiff in the right thigh, both Northcutt's Declaration and Defendants' Separate Statement of Undisputed Facts state that he was struck in the left thigh.  This is not material to the outcome of this motion.

shot while Plaintiff was attempting to get on top of him. Northcutt Decl. ¶ 8. Defendant Mata intended to stop Plaintiff's assault on Officer Northcutt and to gain his compliance. Mata Decl. ¶ 7.

Officer Northcutt then stood up while Plaintiff was on his hands and knees on the floor. He ordered Plaintiff to "prone out" on the ground, but he refused the orders. Northcutt Decl. ¶¶ 9, 10. Officer Solez also repeatedly yelled for Plaintiff to "stay down," but he continued to push himself up. Solez Decl. ¶ 7. Officer Northcutt sprayed a two-second burst of pepper-spray at Plaintiff's face and Plaintiff then crawled towards the Section A phone and got into a prone position on the floor. Northcutt Decl. ¶ 10. Officer Solez also sprayed Plaintiff with pepper-spray. Solez Decl. ¶ 7.

At this time, Defendants Hernandez, Spurgeon and Williams arrived in the unit in response to the alarm and saw several inmates, including Plaintiff, lying on the ground. Plaintiff was lying on the ground, against the wall, underneath the phone, with both hands underneath his chest. Spurgeon Decl. ¶ 5; Hernandez Decl. ¶ 4; Williams Decl. ¶ 4. Defendant Williams gave Plaintiff several orders to put his hands where they could be seen, but Plaintiff ignored the orders and attempted to push himself up. Defendant Williams ordered Plaintiff to stay down and to put his hands to his side, but he continued to refuse the orders and tried to get up. Spurgeon Decl. ¶ 5; Hernandez Decl. ¶ 5; Williams Decl. ¶5. To prevent him from getting all the way up, Defendant Williams pepper-sprayed Plaintiff in the face. Plaintiff stopped trying to get up, but he continued to keep his hands under himself. Spurgeon Decl. ¶ 5; Hernandez Decl. ¶ 5; Williams Decl. ¶¶ 5,6.

The pepper-spray did not immediately work on Plaintiff, so Defendant Spurgeon grabbed Plaintiff by his left arm and forced it behind his back while Defendant Hernandez grabbed Plaintiff's right arm and put it behind his back. Spurgeon Decl. ¶ 6; Hernandez Decl. ¶ 7; Williams Decl. ¶ 7. Defendant Williams then placed handcuffs on Plaintiff while Defendants

Spurgeon and Hernandez held Plaintiff's hands behind his back.  Spurgeon Decl. ¶ 6; Hernandez Decl. ¶ 7; Williams Decl. ¶ 7; Mata Decl. ¶ 10.

   After he was handcuffed, Plaintiff started trying to kick his legs at Defendant Williams and rocking his body from side to side.  Williams Decl. ¶ 8; Hernandez Decl. ¶ 8.  At about this time, Defendant Murphy arrived at the scene and saw Plaintiff fully restrained on the floor.  Murphy Decl. ¶¶ 3,4.  Defendants Williams and Murphy began to escort Plaintiff to the door.  Williams Decl. ¶ 9; Murphy Decl. ¶ 5.  Plaintiff was not cooperative and threw himself to the floor by dropping his body weight.  Defendants Spurgeon and Williams grabbed Plaintiff by his upper arms and Defendant Murphy grabbed him by the ankles.  Williams Decl. ¶ 9; Spurgeon Decl. ¶ 9; Murphy Decl. ¶ 5.  As they carried Plaintiff, he began twisting as they entered the rotunda.  Defendant Williams ordered Plaintiff to stop twisting, but he continued.  Williams Decl. ¶ 10.  Because of the pepper-spray residue on Plaintiff, Defendant Murphy lost his grip on Plaintiff's ankles and feet.  In order to stop his feet from falling to the floor, Defendant Murphy grabbed the leg iron chain.  Murphy Decl. ¶ 7.  Defendant Williams also lost his grip on Plaintiff's arm because of pepper-spray residue and he placed him on the rotunda floor.  Williams Decl. ¶ 10.  Defendants Williams and Murphy then stood him to his feet.  Williams Decl. ¶ 10.  Defendants Spurgeon and Murphy escorted Plaintiff to the Facility B program office without further incident.  Murphy Decl. ¶ 8; Spurgeon Decl. ¶ 8; Williams Decl. ¶ 11.

   Defendant Murphy placed Plaintiff into a holding cell and searched him for contraband.  The search revealed no contraband or weapons.  Murphy Decl. ¶ 9.  Defendant Murphy and Defendant Hernandez decontaminated Plaintiff using cool water from a plastic hose in the outdoor patio area for approximately 10 minutes.  Plaintiff then said that he didn't want anymore.  Hernandez Decl. ¶ 10; Murphy Decl. ¶ 10.  Plaintiff was escorted back to the holding cell to await medical evaluation.  Hernandez Decl. ¶ 11; Murphy Decl. ¶ 10.

At approximately 9:45 a.m. on January 21, 2010, Licensed Vocational Nurse ("LVN") Defendant Meza was called to the Facility B program office to evaluate Plaintiff for clearance to release him to Administrative Segregation.  Meza Decl. ¶ 4.  At 10:20 a.m., she asked Plaintiff to describe, in his own words, what happened.  Plaintiff declined to respond.  Meza Decl. ¶ 5.  Defendant Meza observed several minor injuries on Plaintiff, including scratches on his forehead and right thumb, a discolored area on his right cheekbone, redness on his wrists and the back side of his shoulder, a laceration on his left shoulder and an abrasion/bruise in his right buttock/hamstring area that was bleeding.  Meza Decl. ¶ 6 and Ex. A.  Plaintiff also had signs of pepper-spray exposure, so he was decontaminated with cool running water in accordance with institutional protocol.  Meza Decl. ¶ 7.

When Defendant Meza completed her evaluation and listed the injuries she observed in the medical report, she notified Registered Nurse Guitron and Dr. Patel.  Meza Decl. ¶ 9.  As an LVN, Defendant Meza's duties include observing an inmate, obtaining vital signs, performing basic first aid functions such as cleaning and dressing wounds and distributing medication, and referring inmates to a registered nurse or doctor for further diagnosis and treatment.  It is not within the scope of her practice to diagnose patients or provide advanced medical care, such as sutures.  Meza Decl. ¶ 3.

Plaintiff did not have any problems with any of the Defendant Officers and had no reason to think that they would want to hurt him.  None of the Defendant Officers made threats to Plaintiff.  Pl.'s Dep. 38: 5-12; 58:14-18.

Plaintiff subsequently pled *nolo contendere* to the offense of obstructing/resisting an officer for his role in the events of January 21, 2010.  Cordova Decl. ¶ 5 and Ex. A.

B.     *Plaintiff's Facts*[4]

While Plaintiff was complying with orders and lying on his stomach, Defendant Mata shot him in the right leg thigh area. Defendant Mata did not yell, "Get down," repeatedly. Pl.'s Decl. ¶¶ 3-5. Plaintiff did not ignore any orders to get into a prone position and he did not attempt to get up at any time. Pl.'s Decl. ¶¶ 6-7. He did not strike any officers twice in the face. Pl.'s Decl. ¶ 8.

Defendant Hernandez struck/kicked Plaintiff on the left side of his forehead, while he was lying down on his stomach and complying with orders. Pl.'s Decl. ¶ 9. Defendant was lying on the ground and proned out when Defendant Williams pepper-sprayed him. Pl.'s Decl. ¶ 10. Defendants did not give Plaintiff orders to get down at any time. Pl.'s Decl. ¶¶ 4, 21.

Defendants Spurgeon, Murphy and Williams picked Plaintiff up off the ground by his arms and legs and then slammed him on his back. Plaintiff was in leg restraints and handcuffs when this happened. Pl.'s Decl. ¶¶ 15, 17. Defendants Murphy and Spurgeon dragged Plaintiff by the legs while Plaintiff was in handcuffs and leg irons. Pl.'s Decl. ¶¶ 18. Defendant Hernandez kicked Plaintiff on the top of the head while he was in full restraints and being dragged by the legs. Pl.'s Decl. ¶ 19. He did not twist his body at any time. Pl.'s ¶ 20. While in the rotunda, in restraints and complying with orders, Plaintiff was struck in the head, legs and body. Pl.'s Decl. ¶¶ 22, 23. He was then sat up and struck on the mouth, causing him to lose consciousness. Pl.'s Decl. ¶24.

---

[4] Plaintiff's facts are taken from his December 4, 2012, Statement of Undisputed Facts and his Declaration in support thereof. Although Plaintiff's First Amended Complaint is verified and could be used to support his opposition, Plaintiff did not cite to it in his opposition documents and therefore the Court will not consider it.

The parties bear the burden of supporting their motion and opposition with the papers they wish the Court to consider and/or by specifically referencing any other portions of the record they wish the Court to consider. Fed. R. Civ. P. 56(c); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). The Court will not undertake to mine the record for triable issues of fact. Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010); Carmen, 237 F.3d at 1031.

While Defendant Meza was evaluating him, Plaintiff showed her his left arm, which was swollen and discolored, and told her that he was in serious pain. Pl.'s Decl. ¶¶ 31, 32. Defendant Meza refused to provide treatment and refused to contact a doctor to provide necessary treatment. Pl.'s Decl. ¶ 26. Defendant Meza did not ask any questions, and told Plaintiff that it was not her problem and that he needed to fill out a medical form. Pl.'s Decl. ¶¶ 33, 35. Defendant Meza documented some of Plaintiff's injuries. Pl.s Decl. ¶ 36.

Plaintiff suffered multiple injuries, including a broken arm, injuries to his head and back, and a large purple bruise. Pl.'s Decl. ¶ 27.

### III.     PLAINTIFF'S CHALLENGES TO EVIDENCE

In his declaration, Plaintiff states that his first language is Samoan and he therefore did not fully understand the questions he was asked at his deposition. He also states that he felt forced into proceeding without a Samoan interpreter because if he did not, he thought he would be beaten by officers. Plaintiff further states that he did not sleep within 24 hours prior to the deposition and was therefore confused with the questions asked. Plaintiff was also uncomfortable because a correctional officer was in the room and staring at him, making him afraid to say anything about Defendants. Pl.'s Decl. ¶¶ 47-52.

In response, Defendants submit the transcript of the beginning of Plaintiff's April 12, 2012, deposition. Defendants' counsel, Ms. Coleman, indicates that she spoke with Plaintiff by phone about his request for a Samoan interpreter. Plaintiff testified that they had agreed to go forward without an interpreter, and Plaintiff would let her know if he didn't understand something. Coleman Decl. Ex. A. Ms. Coleman also submits her declaration in which she states that before the deposition, she spoke to Plaintiff about whether he needed an interpreter. Plaintiff handled the conversation well and agreed that he would likely be fine without an interpreter. During the deposition, he answered questions, sometimes with lengthy responses. His answers were responsive, so it appeared to Ms. Coleman that he understood the questions.

Plaintiff did not indicate during the deposition that he had not slept, nor did he express any discomfort with the correctional officer in the room. The deposition transcript was sent to Plaintiff for review. Coleman Decl. ¶¶ 4-7.

The Court has also reviewed Plaintiff's deposition transcript and there is no evidence that Plaintiff was unable to understand the questions or respond appropriately. Given the responsiveness of Plaintiff's testimony, as well as the fact that Plaintiff is raising an issue now, *after* a motion for summary Judgment has been filed, his current claims are questionable at best. The Court therefore overrules Plaintiff's objections to his deposition testimony.

## IV.   DISCUSSION

### A.   Excessive Force

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was

applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

Defendants contend that they used appropriate force to prevent further assault and to control Plaintiff, and therefore did not violate the Eighth Amendment. They argue that during the incident, Plaintiff punched an officer in the face, ignored numerous orders to get down, get into a prone position and/or show his hands, and resisted being placed in restraints. Given these facts, they contend that their use of force was reasonable under the circumstances.

However, Plaintiff, through his declaration, sets forth a very different factual scenario. According to Plaintiff, he complied with all orders and never attempted to push up off the floor. He did not resist restraints by kicking or twisting, and was instead cooperative. Under Plaintiff's facts, Defendants pepper sprayed, struck Plaintiff and/or threw him to the ground while he was compliant.

This factual dispute is sufficient to create a genuine issue of disputed fact as to whether Defendants Mata, Hernandez, Williams, Spurgeon and Murphy used excessive force in violation of the Eighth Amendment.

In their reply, Defendants repeatedly point to the "overwhelming evidence" that they have provided and suggest that the weight of their evidence requires entry of summary judgment in their favor. As this Court has explained before, however, the "weight" of the evidence is not the standard on summary judgment. Plaintiff has offered admissible evidence that creates a genuine dispute of material fact. So long as there is a genuine issue of material fact, regardless

11

of where the weight of the evidence lies, summary judgment must be denied.  It is not for this Court to resolve factual disputes.  Moreover, "'Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom ... summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly.'"  Smith v. City of Hemet, 394 F.3d 689, 701 (9th Cir.2005) (quoting Santos v. Gates, 287 F.3d 836, 853 (9th Cir.2002)).

Accordingly, the Court finds that Defendants Hernandez, Mata, Murphy, Spurgeon and Williams are not entitled to summary judgment.

### B. Deliberate Indifference to Serious Medical Need

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)) (quotation marks omitted).  While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain.  Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted).

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted). To maintain an Eighth Amendment claim, inmates must show deliberate indifference to a substantial risk of harm to their health or safety.  E.g., Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1151-52 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

12

For claims arising out of medical care in prison, Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)).

Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012) (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122. Deliberate indifference may be shown "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096) (internal quotation marks omitted).

Here, the parties agree that Defendant Meza evaluated Plaintiff and wrote down the injuries she observed. They disagree, however, on her treatment of Plaintiff's broken arm. Defendant Meza states that she asked Plaintiff to tell her what happened in his own words, but Plaintiff declined to respond. Plaintiff offers admissible evidence, by way of his declaration, that he told Defendant Meza that his arm was broken and that he was in severe pain. Plaintiff states that Defendant Meza told him that it wasn't her problem and that he needed to fill out a medical request.

In light of Plaintiff's testimony that he told Defendant Meza that his arm was broken, the Court finds a genuine dispute of material fact that precludes summary judgment. The Court recognizes the limited duties of an LVN, but certainly those duties would include recording a claim of a broken arm on the medical report and referring Plaintiff for immediate treatment.

Defendant states that she "notified" Registered Nurse K. Guitron and Dr. Patel, yet she provides no further facts to explain what "notified" entailed in this context. Plaintiff states that she refused treatment and refused to contact a doctor to provide necessary treatment.

Defendant attempts to avoid summary judgment by arguing that even if she refused to treat him and advised him to submit a medical request form, this amounts to an isolated occurrence of neglect. She further argues that Plaintiff does not contend that his injuries were worsened by Defendant's alleged refusal or delay in care, and that a mere delay in treatment does not constitute deliberate indifference.

While Defendant's legal theories may be correct, the facts do not support such conclusions. Drawing all inferences in favor of Plaintiff, Defendant Meza was faced with Plaintiff's complaint that his arm was broken and that he was in severe pain. Defendant Meza did not note his complaint in her report, nor did she refer him for immediate treatment. Given the seriousness of Plaintiff's complaint, this was not an isolated occurrence of neglect. Moreover, although Defendant attempts to minimize the delay, Plaintiff states that he was in severe pain for days after the injury. See Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002) (in delay cases, the needless suffering of pain may be sufficient to demonstrate further harm). An x-ray of his left hand taken on January 27, 2010, showed a nondisplaced distal ulnar fracture. He received a splint, and ultimately a cast, in February 2010. Pl.'s Disp. Facts, Ex. D and E.

Accordingly, the Court finds that Defendant Meza is not entitled to summary judgment.

C. Qualified Immunity

Defendants also contend that they are entitled to qualified immunity. Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In ruling upon the issue of qualified immunity, one inquiry is whether, taken in the light most favorable to the party asserting the injury, the

facts alleged show the defendant's conduct violated a constitutional right.  Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223, 236 (2009) ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand").

The other inquiry is whether the right was clearly established.  Saucier, 533 U.S. at 201. The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ."  Id.  "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense:  The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Id. at 202 (citation omitted).  In resolving these issues, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff.  Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).

The Court finds that Defendants are not entitled to qualified immunity.  Taken in the light most favorable to Plaintiff, the facts indicate a violation of Plaintiff's rights under the Eighth Amendment, as stated above.  Such rights were clearly established at the time of the incident. See, e.g., Whitley v. Albers, 475 U.S. 312, 320-21 (1986).

V.      **CONCLUSION AND RECOMMENDATION**

Based on the foregoing, it is HEREBY RECOMMENDED that Defendants' motion for summary judgment, filed October 4, 2012, be DENIED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within thirty (30) days after being served with these Findings and Recommendations, the parties may file

written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." A party may respond to another party's objections by filing a response within fourteen (14) days after being served with a copy of that party's objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **May 17, 2013**                          /s/ Dennis L. Beck
                                         UNITED STATES MAGISTRATE JUDGE